hARMSTRONG, Judge.
This is an appeal from a judgment in a succession proceeding, authorizing the executor, Martin 0. Miller II, to control access to the residence of the decedent, and the movables contained therein and elsewhere. Finding no error in the judgment of the trial court, we now affirm.
The decedent, Edna Kuntz Miller, died testate on August 22, 1994. One of her sons, *442 Martin O. Miller II, was appointed executor pursuant to her statutory last will and testament. The decedent had been married once, to Martin 0. Miller (“Mr. Miller”), who predeceased her. The couple had eight children born of the marriage, seven of whom survived her. The eighth child predeceased the decedent, but was survived by four children, all of whom survived the decedent.
At the time of the decedent’s death, the seven surviving children each owned a one-sixteenth undivided interest, and the four children of the predeceased daughter, each a one-sixty fourth undivided interest, in a residence located at 24 Audubon Place, New Orleans, Louisiana, and the movables contained therein and elsewhere, by virtue of Mr. Miller’s succession. Martin 0. Miller II controlled the interest of one sister, Diane, who was an interdict, as her curator. The ownership interests of Mr. Miller’s heirs was subject to the surviving spouse usufruct in favor of the decedent. Upon the decedent’s death, they became owners indivisión of one-half of the property in question.
^Because of concern about his personal liability as executor, on the advice of counsel, Martin Miller proposed a plan regarding access to the Audubon Place residence. He essentially gave the heirs two choices: (1) they could have access to the residence if they gave him reasonable notice, telling him how long they wanted access, access would be given only for a “reasonable time” and for a “legitimate purpose,” and he ór his( desig-nee would be present during the visit; or (2) the heirs could have unrestricted access to the house if they all released him from all personal liability. All heirs did not release him from liability so Martin Miller implemented the restricted access plan. The decedent’s only other son, Pierre Valcour Miller (“Val Miller”), objected to the restricted access and filed a petition for injunctive relief, seeking to enjoin Martin Miller from interfering with his rights as a co-owner of the residence. The trial court denied relief. Approximately one week later, Martin Miller filed a “Motion To Determine Management of Property Held In Indivisión.”
At trial of the motion, Martin Miller testified that he was concerned about his personal liability should visitors to the residence, or heirs, remove movables from the residence or have an accident on the premises. The residence was appraised at $1,300,000.00 and, the contents, at $53,735.35. Martin Miller admitted that the Audubon Place residence and contents were insured for one million dollars and that all of the .movables in the residence had been individually appraised. He said he had never refused anyone access to the residence under the plan and that Val Miller was the only heir who objected to the restricted access. Martin Miller also testified that there had been problems with Val Miller concerning the use of property co-owned by the heirs in Cameron and Vermilion parishes. He said Val Miller took two trailers and a bulldozer for personal use and had not returned them. He also said Val Miller had not been paying his share of the expenses to maintain this property. Martin Miller mentioned a check, in the amount of $1,130.75, from the State of Louisiana in reimbursement of money owed the late Mr. Miller’s estate. Martin Miller said he sent the check to Val Miller for endorsement, with intentions of eventually sending it to all of the other heirs for signature. However, Val Miller would not sign the check, but instead, returned it to Martin. The check was eventually declared dead by the state. Martin Miller testified that the Audubon Place residence was listed |3for sale. A copy of an informational sheet from the real estate company was introduced into evidence.
A sister, Marian Miller Green, testified that she believed Martin Miller’s restricted access policy was reasonable and that it would be chaos if everyone had unlimited access. She said it had been chaotic at the family-owned residence situated on the country property because one never knew how many people would be coming. Bed space was limited. On cross examination, she admitted there had been fewer beds than overnight visitors on only one occasion. She could not recall if Val Miller had been there on that occasion, nor could she recall Val Miller ever being associated with chaos.
Edward Rapier was the trustee of a trust established under the estate of the deceased daughter, Mildred Ann Miller Boulet, for *443 Boulet’s four children. Rapier said he agreed with Martin Miller’s plan. He said as trustee he would not agree to hold Marin Miller harmless — it would violate his duty as a trustee.
Val Miller testified that he had tremendous sentimental associations with the Audubon Place residence. He lived there for twenty-two years and had continued to visit up to three times a week for thirty-three years until the death of his mother. Being a recovering alcoholic, he said is an extremely stressful time for him and it is being made more so by the actions of his brother in restricting his access to the residence. He believes as a co-owner, he has a right to unrestricted access to the home. He candidly admitted that he believed he has a right to take movables out of the residence without asking, possibly not returning the item(s) until another heir asks him to. However, he said he would agree not to take anything out of the residence and he would agree to hold Martin Miller harmless if he gave either himself or anyone else a key to the residence. He said he did not think he was legally required to get permission from the other co-owners before using the property.
Val Miller said he never interfered with the use of any of the Cameron or Vermilion Parish property by any of his co-owners. He introduced a letter into evidence wherein he requested that the co-owners voice any objection to his hosting a duck hunt bachelor party for his son at the country residence one particular fall weekend in 1993. He said one of his brothers-in-law drove the bulldozer into a canal years ago. He retrieved it after a period of Utime, intending to have it repaired, but discovered it would be too expensive. He still has the bulldozer in his possession and said none of the co-owners have ever asked for it. As for the two trailers, he said he uses those on the section of the country property he manages and that none of the co-owners has asked for them. He said he was not paying for the maintenance of the country property because he had paid the full cost of it for a period of time. As for the $1,130.75 check from the State of Louisiana, he said he did not feel it should have been simply endorsed by all heirs and negotiated as Martin Miller was attempting to do, rather, it should have been put through his father’s succession. Val Miller introduced into evidence a letter from his sister, Judith M. Kavanagh, to Martin Miller’s attorney, wherein Judith authorized the attorney to give any co-owner a key and alarm access code, and agreeing to hold Martin Miller harmless for any losses caused by a co-owner’s access. Judith also indicated that she and her sisters might want to go through the decedent’s clothing in the near future and that she might request a key and access code at that time. Val Miller seemed to believe the import of this letter was that Judith did not agree with Martin Miller’s access policy.
The trial court heard this evidence and rendered judgment “pursuant to Louisiana Civil Code Article 803,” giving Martin Miller control of the keys and alarm code to the residence, and decreeing that the co-owners could have access to the residence only if accompanied by the executor or his designee, “upon reasonable notice, for a reasonable time, and for a legitimate reason related to the administration of the succession and disposition of the home and the movables contained therein.”
Appellant Val Miller claims the trial court had no authority to issue the ruling it did.
The trial court rendered judgment, citing as authority, La.C.C. art. 803, which provides:
When the mode of use and management of the thing held in indivisión is not determined by an agreement of all the co-owners and partition is not available, a court, upon petition by a co-owner, may determine the use and management.
[gVal Miller argues that partition is available and, thus, C.C. art. 803 was not applicable.[1] He cites La.C.C. art. 802 which states that a co-owner is entitled to use the thing but cannot prevent another co-owner from *444 making use of it. He submits that La.C.C. art. 802 governs this ease and that none of the co-owners can prevent him from using the property as Martin Miller is attempting to do. He argues that La.C.C. art. 803 is limited to a situation such as where the parties have agreed, in writing, not to partition property, for up to fifteen years, as provided for by La.R.S. 9:1112 and 9:1702.
Title VII of the Louisiana Civil Code, Ownership In Indivisión, consisting of Articles 797 through 818, became effective in January 1991. There is scant jurisprudence interpreting these articles. La.C.C. art. 801 provides: “The use and management of the thing held in indivisión is determined by agreement of all the co-owners.” The codal scheme envisions, first, the co-owners agreeing among themselves how to manage the property held in indivisión. Martin Miller submits that if, for some reason the co-owners cannot agree on the use and management of the property, and a partition has not yet been ordered, then La.C.C. art. 803 authorizes a court, upon petition by another co-owner, to determine the use and management of the property.
Martin Miller, as co-owner (and as executor), and all of the co-owners in indivisión, including Val Miller, agreed to list the residence with a real estate agent for sale and, at the time of trial, it was on the market. If the residence sold, a partition would have been unnecessary. Given that situation, no co-owner had sought a partition as of the time of trial. A court order of partition by licitation would simply have resulted in the residence being offered for sale, as it already had been. Pending that sale, we believe a trial court could determine the use and management of the residence, in the absence of an agreement between the co-owners. The alternative would be infighting among the co-owners pending the actual sale. We find that, as a practical matter, a partition was “not available” because it would have been a needless expense and unnecessary judicial procedure. Because the co-owners could not agree on the use and |6management of the thing among themselves pending the sale of the residence, the trial court had the authority to make that determination pursuant to C.C. art. 803.
Val Miller next questions the reasonableness of the trial court’s determination of use and management. At one point in his testimony, Val Miller said he believed he had a right to use the residence as he so desired and to remove movables and possibly keep them until another co-owner asked for them. However, he subsequently stated that he would agree not to remove any item from the residence. Val Miller also gave some emotional testimony about his sentimental attachment to the family residence, which he had lived in for twenty-two years of his early life and frequently visited for more than thirty years thereafter. Nevertheless, the trial court, heard the evidence, observed the demeanor of the witnesses, and determined what it felt was the best use and management of the residence under the circumstances. We cannot say the trial court erred.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

. In fact, attached to Martin Miller’s brief on appeal, is a copy of a petition to partition assets filed against Val Miller by all of the other co-owners and Martin Miller as executor of the decedent’s estate. However, at the time of trial this petition had not been filed.